# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **TED THOMPSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 07-1062-MLB** |
| ) | |
| **ASSURANT EMPLOYEE BENEFITS,** ) | |
| **et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |
| ) | |

## MEMORANDUM AND ORDER

This matter is before the court on the following motions:

      1. Plaintiff's Motion to Compel Rule 26 Disclosures (Doc. 15);

      2. Defendants' Motion to Strike (Doc. 25);

      3. Defendants' Motion for a Protective Order (Doc. 26); and

      4. Plaintiff's Motion to Compel Discovery (Doc. 28).

For the reasons set forth below, the motions are GRANTED IN PART and DENIED IN PART.

## Background

This is a lawsuit to recover long-term disability income benefits under the Employee

Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461.[1]  Highly summarized, plaintiff alleges that he was employed by Wichita Anesthesiology Chartered (WAC) as a certified registered nurse anesthetist (CRNA) until January 2003 when he became unable to work because of "cerebral artery dissections."[2]  WAC provides disability insurance benefits to its employees through a policy first issued by Union Security Insurance Company in 1994.[3]

Plaintiff applied for disability benefits in 2003.  Union Security approved the request and informed plaintiff that January 27, 2003 was considered the onset date of his disability with monthly payments commencing May 5, 2003.

On May 2, 2005, Union Security notified plaintiff that additional long term benefits

---

[1]
Plaintiff argues in her motion to compel that defendants have failed to show that this case is governed by ERISA; therefore, discovery should be conducted as in any other lawsuit.  However, the claims in the amended complaint are brought under ERISA and the basis for plaintiff's argument is not entirely clear.  There is no dispute that the policy under which plaintiff seeks recovery was a benefit provided by WAC to its employees.  Her claim that defendants breached their fiduciary duty also stems from ERISA statutes and regulations.  The court is satisfied that the matter before the court is an "ERISA case."

[2]
Plaintiff suffers from severe vascular disease since at least 1999.  In January 2003 he experienced left side numbness and subsequently had daily spells of "dizziness, ear ringing, nausea, mild headache, and light headedness."  Doc. 13, p. 5.  The vascular disease caused brain damage and neuropsychological tests in 2004 revealed "short term memory deficits and a severe expressive language disorder."  Doc. 13, p. 5.  Defendants do not dispute that plaintiff is unable to work as a "certified registered nurse anesthetist" but argue that he is not entitled to long term disability benefits under the terms of the insurance policy.

[3]
Fortis Benefits Insurance Company issued the original policy but apparently changed its name to Union Security in 2005.  (Doc. 27-5).  For editorial consistency the court will refer to Union Security as the company that issued the policy.

were denied "because his medical condition did not prevent him from performing the material duties of each gainful occupation for which he was qualified based on his education, training and experience." Doc. 13, p. 3.[4] Included with the denial letter was a copy of Union Security's "Claim Denial Review Procedure" which described plaintiff's rights with respect to an administrative appeal. Specifically, Union Security granted plaintiff the right to

> 1. review, upon request and free of charge, copies of all documents, records, and other information relevant to plaintiff's claim for benefits;

> 2. review copies of any internal rule, guideline, protocol, or other similar criterion that was relied upon in making the decision to deny plaintiff's claim;

> 3. request the identity of all medical or vocational experts whose advice was obtained on behalf of the plan;

> 4. submit issues and comments in writing, along with additional documents, records, and other information relating to plaintiff's claim.

Doc. 29-2, p. 23. The "claim procedure" also provided that a decision on a request for review would be made 45 days after Union Security received a written request unless special circumstances required an extension of time to assess the evidence. Id. In the event an extension of time was needed, the "claim procedure" provided that a decision would be

---

[4] The policy contains different eligibility tests for different time frames. During the first 27 months of a period of disability, a covered employee is eligible for benefits if the injury or sickness prevents the person from performing the material duties of the individual's *regular occupation.* After 27 months of disability, the injury or sickness must prevent the covered employee from performing at least one of the material duties of *"each gainful occupation for which your education, training, and experience qualifies you."* Doc. 27-2. Union Security reevaluated plaintiff's status at the conclusion of the "first 27 months" and concluded that he no longer qualified for disability benefits.

rendered "within 90 days after the date the original request for review was received." Id.

Union Security's administrative appeal process has two levels of review. The "first review" is conducted by an individual not involved in the original denial. If the claim is still denied after the "initial request for review," a claimant may request a second review. A "manager in the Disability Claims area" or Union Security's "Disability Claims Appeal Committee" conducts the "second review" and the decision of the manager or committee is considered the final level of administrative review available. Doc. 29-2, p. 23.

On September 26, 2005, plaintiff timely filed an administrative appeal of the initial denial. The review was assigned to Kimberly Myers, an "analyst," with a promise that Myers would "provide updates throughout the length of the claim, sending correspondence approximately every 30 days until completion." Doc. 29-2, p. 43. Thereafter, from September 2005 until August 4, 2006, Myers sent various (1) requests for additional information and (2) letters indicating that records had been sent to consultants for review. Seven months after Myers' last letter to plaintiff (August 4, 2006) and seventeen months after his "request for review" (September 26, 2005), plaintiff filed this lawsuit on March 5, 2007. On March 6, 2007 (the next day), Myers issued a decision denying plaintiff's request for long-term disability benefits. Additional allegations and facts are contained in the following discussion of the parties' motions.

**Plaintiff's Motion to Compel Rule 26 Disclosures (Doc. 15)**

Plaintiff moves to compel defendants' Rule 26(a)(1) initial disclosures.  (Doc. 15).

In support of his motion, plaintiff argues that defendants' Rule 26(a)(1) disclosures were due

July 9, 2007 and, as of the date of his motion (July 23, 2007), the disclosures had not been

provided.  Defendants oppose the motion, arguing that the matter is moot because the

disclosures were shipped to plaintiff's counsel on July 26, 2007.

Defendants have now provided plaintiff with their Rule 26(a)(1) initial disclosures;

therefore, production is no longer an issue.  However, the motion to compel is not "moot"

because the issue of fees and costs under Fed. R. Civ. P. 37(a)(4) remains.  Rule 37(a)(4)(A)

provides:

> If the motion [to compel] is granted or ***if the disclosure or requested***
> ***discovery is provided after the motion was filed, the court shall***, after
> affording an opportunity to be heard, require the party or deponent
> whose conduct necessitated the motion or the party or attorney advising
> such conduct or both of them to pay the moving party the reasonable
> expenses incurred in making the motion, including attorney's fees, unless
> the court finds that the motion was filed without the movant first making
> a good faith effort to obtain the disclosure or discovery without court
> action, or that the opposing party's nondisclosure, response, or objection
> was substantially justified, or that other circumstances make an award of
> expenses unjust.  (Emphasis added).

Consistent with Rule 37(a)(4)(A), the court will afford defendants an opportunity to

be heard before imposing sanctions.

**IT IS THEREFORE ORDERED** that plaintiff's motion to compel **(Doc. 15)** is

**DENIED IN PART** because defendants have now provided their Rule 26(a)(1) disclosures.

The issue of sanctions remains under advisement and plaintiff shall file and serve a statement

of fees and expenses "incurred in making the motion" on or before **January 11, 2008.**
Defendants shall file a response by **January 25, 2008** concerning the amount of the
requested fees and expenses and any reason why sanctions should not be imposed.
Sanctions, if awarded, will be imposed jointly against defendants and defense counsel unless
evidence is presented showing that the failure to provide timely disclosures was wholly the
fault of either (1) defense counsel or (2) defendants.  The response shall be limited to four
pages and no reply is authorized at this time.

### Defendants' Motion to Strike (Doc. 25)

Defendants move to strike portions of plaintiff's reply brief related to initial
disclosures, arguing that plaintiff requests relief not mentioned in his opening brief.
Specifically, defendants object to arguments concerning (1) the substantive adequacy of
defendants' Rule 26(a)(1) disclosures and (2) other pending discovery requests.  The court
agrees that these two issues are not properly before the court; thus, the motion to strike
portions of the reply brief shall be GRANTED.

**IT IS THEREFORE ORDERED** that defendants' motion to strike portions of
plaintiff's reply brief **(Doc. 25)** is **GRANTED.**  Plaintiff's arguments concerning (1) the
substantive adequacy of defendants' Rule 26(a)(1) disclosures and (2) other pending
discovery requests were not considered when the court ruled on plaintiff's motion to compel
initial disclosures (Doc. 15).

**Defendants' Motion for a Protective Order (Doc. 26)**
**and**
**Plaintiff's Motion to Compel Discovery (Doc. (Doc. 28)**

Union Security moves for a protective order because (1) discovery in this ERISA case is limited to the "administrative record" existing at the time of defendant's "final benefits determination" and (2) plaintiff is not entitled to any other discovery. Doc. 27, pages 3, 9. Plaintiff opposes Union's motion for a protective order and moves to compel responses to interrogatories, production requests and deposition notices. Doc. 29, p. 22. Because the fundamental dispute between the parties is the "scope" of discovery, the motions are addressed together.

Union Security argues that this case is simply a review of an ERISA benefit determination concerning long term disability benefits; thus, the court's review is limited to the administrative record at the time of the final benefit decision. Doc. 27, p. 1. Because the scope of review is limited, Union Security contends that plaintiff is not entitled to conduct discovery beyond the administrative record. See, e.g., Panther v. Synthes, 371 F. Supp. 2d 1267 (D. Kan. 2005)(granting protective order against discovery beyond the administrative record). Doc. 27, p. 2. Union Security argues that it has produced the complete administrative record as part of its initial Rule 26 disclosures; therefore, any additional discovery is unnecessary and inappropriate.

Plaintiff counters that, contrary to Union Security's assertion, this is *not* a routine ERISA case seeking review of a final benefit determination. Rather, plaintiff argues that this case involves numerous procedural irregularities related to his claim for disability benefits

which ultimately forced him to file suit to recover benefits.[5]   Because of these "irregularities," plaintiff argues that he should be permitted to conduct discovery beyond the administrative record.

In determining the "scope of discovery" the court must first determine the legal and factual issues in the case.  If this were a "run-of-the-mill" review of a denial of ERISA's benefits under 29 U.S.C. § 1132(a)(1)(B) the standards would be relatively straight-forward. "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  If the plan grants the plan administrator or fiduciary discretion to determine eligibility for benefits or to construe the plan's terms, the court applies an arbitrary and capricious standard.  Chambers v. Family Health Corp., 100 F.3d 818, 825 (10th Cir. 1996);  Sandoval v. Aetna Life & Cas. Ins. Co., 967 F. 2d 377, 380 (10th Cir. 1992).

If the "arbitrary and capricious" standard of review applies, the district court generally may consider only the evidence before the administrator or fiduciary at the time the fiduciary made its decision.  Sandoval, 967 F. 2d at 380.  "In effect, a curtain falls when the fiduciary completes its review."  Id. at 381.  Because the district court must evaluate the record as it

---

[5]

In addition to his claim for benefits under 29 U.S.C. § 1132(a)(1)(B), plaintiff alleges that Kimberly Myer, on behalf of Assurant, (1) failed to adhere to the time frame for deciding his appeal, (2) failed to provide adequate and timely services, (3) failed to provide the "plan" and other requested documents, and (4) breached defendants' fiduciary duty.

was at the time of the decision under an arbitrary and capricious standard, no purpose is served by conducting discovery in an attempt to supplement the record.

Under a *de novo* standard of review, the district court <u>ordinarily</u> restricts its review to the administrative record, but has discretion to allow supplementation "when circumstances clearly establish that additional evidence is necessary to conduct an adequate *de novo* review of the benefit decision." <u>Hall v. Unum Life Insurance Co. of America</u>, 300 F.3d 1197, 1202 (10th Cir. 2002). However, "it is the unusual case in which the district court should allow supplementation of the record." <u>Id.</u> at 1203.[6] This admonition was recently reemphasized:

> ERISA policy strongly disfavors expanding the record beyond that which is available to the plan administrator. Supplemental evidence should not be used to take a second bite at the apple, but only when necessary to enable the court to understand and evaluate the decision under review.

<u>Jewell v. Life Ins. Co. of North America</u>, ___F.3d ____, 2007 WL 4218919 (10th Cir. Nov. 30, 2007).

The difficulty in this case, based on the record before the court, is that it is not clear which standard of review applies, e.g., arbitrary and capricious or *de novo*. For example, the insurance policy in effect in 2004 (the one on which Union Security relies for an arbitrary

---

[6]

Examples of exceptions include (1) claims that require consideration of complex medical questions or issues regarding the credibility of medical experts; (2) the availability of very limited administrative review procedures with little or no evidentiary record; (3) the necessity of evidence regarding interpretation of the plan rather that specific historical facts; (4) instances where the payor and administrator are the same entity; (5) claims which would have been insurance contract claims prior to ERISA; and (6) circumstances in which there is additional evidence that the claimant could not have presented in the administrative process. <u>Hall</u>, 300 F. 3d at 1203. However, district courts are not required to admit additional evidence when these circumstances exist. <u>Id.</u>

and capricious standard) contains language to the effect that the insurance company has "sole discretionary authority to determine eligibility for participation or benefits and to interpret the terms of the policy."  However, plaintiff argues that the policy in effect at the time he became disabled did *not* contain such language and asserts there is no evidence in the record that the policy was properly amended or that he is bound by the modified language.  Given the limited record, the court is unable to determine whether the 2004 policy or some prior version applies to plaintiff's claim for long term benefits.[7]

Even if the "plan" (insurance policy) properly provides Union Security with "sole discretionary authority to determine eligibility," it is still not clear that the arbitrary and capricious standard applies because Union Security did not render a decision on plaintiff's administrative appeal until after this lawsuit was filed.  As noted above, the "decision" came 18 months after plaintiff's request for review of the initial denial and 7 months after the last communication from Kimberly Myers.  Union Security's appeal procedure provides, at most, for 90 days to issue a decision after notification of a request for review.  Similarly, 29 C.F.R. §§ 2560.503-1(i)(l)(i) and l(i)(3)(i) provide for an initial 45 days to make a decision with a 45 day extension for special circumstances.  When a fiduciary or plan administrator fails to render a timely decision, no deference is given to its "decision" and the court conducts a *de novo* review.  See Gilbertson v. Allied Signal, Inc., 328 F. 3d 625 (10th Cir. 2003)(decided under an earlier  version of the regulations); Reeves v. Unum Life Ins. Co. of America, 376

_____

[7]

This issue is further confused by ***plaintiff's*** allegation in his amended complaint that "Fortis Benefits Insurance Company was given the sole discretionary authority to determine eligibility for participation or benefits and to interpret the terms of the policy." Doc. 13, paragraph 11.

F. Supp. 2d 1285 (W.D. Oklahoma 2005)(decided under current version of regulations).[8]

In addition to the standard of review debate, this case also presents an unusual number of peripheral issues related to plaintiff's claim for long term disability benefits.[9]  For example, it is unclear (1) whether the insurance policy is *the* "plan" or whether other formal plan documents exist and (2) which policy applies to plaintiff's claim.  There is also confusion and/or ambiguity (1) concerning the proper defendant or defendants, (2) Union Security's production of its internal policies and procedures for evaluating plaintiff's claim, (3) claims of the attorney client privilege, and (4) the peculiar history of the "administrative

---

[8]

Union Security argues that the delay "does not undermine [the court's] confidence in the integrity of [the administrator's] decision-making process," therefore the arbitrary and capricious standard of review should still apply.  Finley v. Hewlett-Packard Co. Employee Ben. Org., 379 F. 3d 1168 (10th Cir. 2004).  This argument is not persuasive because Finley recognized a "substantial compliance" exception under the then existing regulations.  As Judge Cauthron observed in Reeves, the Department of Labor rejected the "substantial compliance" doctrine when amending the regulations.  Reeves, 376 F. Supp. 2d at 1293-1294.

More importantly, even if "substantial compliance" remains a viable argument, the doctrine would not apply in this case.  In Finley, the "decision" denying benefits was 27 days late.  In this case, Union Security was silent for 7 months and failed to issue a decision until after plaintiff filed his lawsuit.  Seven months of silence is not "substantial compliance."  Gilbertson, 328 F. 3d at 629-30, 636 ("more than six months of radio silence" resulted in *de novo* review).

[9]

The stand of review analysis is for purposes of discovery only.  The court expresses no opinion on the standard of review when the issues are refined and presented to the district judge for a ruling on the merits.

record."[10]

Mindful of the Tenth Circuit's admonition in Hall that it is the "unusual case" that justifies supplementation of the record, this court is of the opinion that certain discovery should be permitted, not as a vehicle for a "second bite at the apple" but rather "to enable the court to understand and evaluate the decision under review." Jewell, supra. Specifically, the court will allow discovery to (1) clarify that the proper defendant(s) has been named, (2) clarify which insurance policy is applicable to this case, (3) confirm that the administrative record is complete and that plaintiff has been provided with all policies and procedures considered by defendants in evaluating plaintiff's claim and (4) explain the circumstances

---

[10]
     The initial decision to deny plaintiff's claim for disability benefits after April 2005 contained numerous factual errors concerning the medical records. Thereafter, in response to a request by plaintiff's counsel, a Fortis "claims analyst" reported that the file prior to October 2003 had been misplaced and could not be found. Doc. 29-2, p.26. In September 2005, an Assurant Employee Benefits "field specialist" reported that the file had been located and that Kimberly Myers would be handling plaintiff's appeal. Doc. 29-2, pp. 40-43. On February 1, 2006, Myers advised plaintiff that his file would be sent to a physician for review followed by a referral to a psychologist. Doc. 29-2, p. 2. However, Myers did not disclose that she had retained the services of a private investigator to conduct surveillance on plaintiff in February at his new home in Arkansas. On March 28, 2006, Myers confirmed that she had received plaintiff's February 20, 2006 letter containing additional information and was now referring the matter to a physician for review. On May 3, 2006, Myers reported that a decision could not be made without a referral to a psychologist. The psychologist apparently recommended review by an independent third party. On June 7, 2006 Myers advised plaintiff that his file was now being forwarded to "our vocational service department." In July, Myers reported that the clinical neuropsychologist needed addition raw data from tests conducted by plaintiff's doctors. On August 4, 2006, Myers reported that the additional data had been received and that the matter had been referred to the neuropsychologist. Plaintiff heard nothing further from Myers until after he filed this lawsuit on March 5, 2007. The record is silent on what caused Myers to file her "determination" the day after the lawsuit was filed. One conclusion to be drawn from the record is that Myers "shopped" plaintiff's file, first to a private investigator and then to one "consultant" after another, in an effort to build a rationale for denying plaintiff benefits.

causing Myers to be silent for 7 months and to suddenly issue an adverse decision the day after this lawsuit was filed.[11]   The court declines to allow discovery concerning (1) investigations by regulatory authorities or other lawsuits and (2) the personnel records of employees involved with plaintiff's claim.  This latter discovery would lead to the type of open-ended discovery that is contrary to the purpose of ERISA.  With these standards and guidelines in mind, the court considers plaintiff's specific discovery requests.

**Attorney Client Privilege**

Union Security objected to discovery based on the attorney client privilege but provided no information from which plaintiff or the court could determine whether the privilege applies.  Plaintiff moved to compel the information withheld on the basis of the attorney client privilege.  Union Security now argues that it has withheld no documents based on the attorney client privilege; therefore, the motion to compel is moot.  More specifically, Union Security states " the issue is much ado about nothing, as defendant did not have any documents to withhold from production based on the asserted privilege."  Doc. 45, p. 13. Notwithstanding this admission, Union Security failed to withdraw its objection based on the attorney client privilege.

The assertion of the attorney client privilege when no document exists that is

---

[11]

Discovery concerning the 7-month period of silence and the timing of Myers "decision" is necessary, in part, to address Union Security's argument that the "delay" does not undermine the court's confidence in the integrity of the decision-making process.  Doc. 45, p. 10, footnote 4.  Discovery is also necessary to determine whether anyone prompted Myers to issue her decision after the lawsuit was filed and whether the administrative record is complete.

arguably subject to the privilege is improper.  However, the record is not sufficiently developed to determine whether the assertion of the privilege in this instance rises to the level of bad faith or is merely the result of inadequate analysis by defense counsel.  The court declines to award sanctions at this time.  However, the court retains the right to consider Union Security's improper response when considering future discovery disputes.  Union Security's assertion of the attorney client privilege in response to plaintiff's discovery requests is REJECTED.   Any documents or information withheld on the basis of the attorney-client privilege shall be produced.

**Interrogatory No. 2**

Interrogatory No. 2 requests information concerning all lawsuits within the last 10 years brought by policy holders for long term disability benefits.  Although defendants objected, they answered by stating that no such lawsuits were brought by policy holders. The motion to compel Interrogatory No. 2 shall be **DENIED.** First, Union Security has answered the interrogatory.  Moreover, as discussed above, the court declines to allow such open ended discovery in this ERISA lawsuit.

**Interrogatory No. 3**
and
**Production Request No. 5**

Interrogatory No. 3 requests the chronological history of all corporate name changes for the past 15 years for Union Security Insurance Company, Fortis Benefits Insurance Company, and Assurant Employee Benefits.  Production Request No. 5 asks for all

documents showing application and approval of corporate name changes or successors in interest for Union Security, Fortis, and Assurant Employee Benefits for the past 15 years. Defendants object to the interrogatory as irrelevant and then answer the interrogatory by explaining that Western Life Insurance Company changed its name to Fortis Benefit Insurance Company in January 1992. Defendants also represent that in February 2004, Fortis Benefit began marketing its products under the name Assurant Employee Benefits which, according to defendants, is only a name and not a separate legal entity. Fortis Benefits changed its name to Union Security Insurance Company in September 2005 and continued marketing its products under the name Assurant Employee Benefits. Plaintiff disputes the accuracy of this answer and seeks more detailed information concerning the status of Assurant Employee Benefits and Union Security.

Plaintiff's uncertainty concerning the proper defendant(s) is understandable. When plaintiff was disabled in January 2003 and submitted his request for benefits, correspondence and communications initially came from "Fortis Benefits Insurance Company," the company which issued the original insurance policy. In 2005 plaintiff received correspondence using the Fortis Benefits' letterhead from an employee with an "assurant.com" email address. Then, without any apparent explanation, plaintiff began receiving correspondence with "Assurant Employee Benefits" as the letterhead. Thereafter, plaintiff's counsel communicated with individuals represented to be "appeals specialists" or "analysts" for Assurant Employee Benefits.

Union Security argues that Assurant Employee Benefits is merely a "marketing tool" and has no separate legal existence. Union's Memorandum for Partial Summary Judgment,

-15-

Doc. 42.  However, nothing in the "administrative record" filed with the court by Union Security explains who "Assurant Employee Benefits" is.  Further, Union supports its summary judgment motion with supplemental exhibits and an affidavit.[12]  Union Security's reliance on exhibits and an affidavit that are not part of the administrative record illustrates the need to supplement the administrative record in this case.[13]

Plaintiff's discovery requests present two problems.  First, under the circumstances of this case, discovery extending back 15 years is excessive.  More importantly, Union Security has answered the interrogatory and explained that Assurant Employee Benefits is merely a marketing name and is not a separate legal entity.  Plaintiff disputes the accuracy of this response, citing information he has gleaned from internet searches suggesting that Assurant Employee Benefits is a part of Assurant, Inc., an entity that has some sort of relationship with Union Security.  However, as currently drafted, the interrogatory and production request before the court are not sufficiently tailored to resolve the status of Assurant Employee Benefits.

Accordingly, the motion to compel Interrogatory No. 3 and Production Request No. 5 shall be DENIED WITHOUT PREJUDICE.  Plaintiff may submit additional

---

[12]

At the bottom of the Assurant stationery was the following language: "Products and services marketed by Assurant Employee Benefits are underwritten and/or provided by Union Security Insurance Company."  Although the fine print explains that Assurant markets insurance policies issued by Union Security Insurance Company, there is no other explanation concerning the nature or status of Assurant Employee Benefits.

[13]

In response to the motion for partial summary judgment, plaintiff moved for discovery under Rule 56(f).

interrogatories and production requests more narrowly tailored to Union Security's assertion that "Assurrant Employee Benefits" is merely a marketing tool with no legal existence. Plaintiff may also serve written discovery clarifying the relationship, if any, between Assurant, Inc., Union Security, and Assurant Employee Benefits.

**Interrogatory No. 4**

Interrogatory No. 4 asks for the names and job titles of all persons who participated in the decision to deny benefits and the name of the employer (at the time of the decision) for each person. After asserting some preliminary objections, defendant cites Fed. R. Civ. P. 33(d) and argues that the administrative record has been produced and speaks for itself.

Union Security's reliance on Rule 33(d) and reference to the administrative record is not persuasive. First, the administrative record does not indicate who employed the persons who made decisions to deny plaintiff benefits.[14]  Equally important, the option to produce business records under Rule 33(d) to answer an interrogatory is only appropriate if the burden of ascertaining the answer is substantially the same for the party serving the interrogatory as it is for the responding party. The court has reviewed the "administrative record" filed by Union Security and finds it to be a disorganized mass of documents and otherwise a classic "document dump" on opposing counsel. Because Union Security's reliance on Rule 33(d) is rejected, plaintiff's motion to compel Interrogatory No. 4 is

---

[14]

For example, a review of correspondence in the administrative record suggests that Myers was employed by Assurant Employee Benefits. However, Union Security now argues that Assurant is not a legal entity.

GRANTED.


**Interrogatory No. 5**

Interrogatory No. 5 seeks information concerning defense counsel's threat of sanctions for suing a non-existing entity.  No motion for sanctions by Union Security is pending.  The court declines plaintiff's request for discovery concerning sanction issues at this time. Accordingly, the motion to compel Interrogatory No. 5 shall be DENIED.


**Interrogatory Nos. 6-10**

Interrogatory Nos. 6-10 seek information concerning various issues in this case.  For example, Interrogatory No. 7 requests the facts supporting defendants' contention that plaintiff did not sustain a brain injury which resulted in his current disabled condition. Interrogatory No. 8 asks why the denial of plaintiff's appeal took longer than 120 days. Union Security objected to the request and then referred to the administrative record under Rule 33(d).  Union Security also argues that plaintiff's "contention" interrogatories only "serve to elicit post-hoc rationalization of the claim review and final benefit determination and will not produce relevant and admissible evidence."

Again, Union Security's reliance on the administrative record and Rule 33(d) is not appropriate.  For example, the administrative record fails to explain the 7-month period of

silence before plaintiff filed this lawsuit.[15]  Moreover, Union Security never issued a "final benefit determination."  As discussed earlier, plaintiff finally filed this case after waiting 18 months for a decision.  The day after suit was filed, Myers filed what purports to be a denial of the claim.[16]  Because defendants failed to issue a "final benefit determination" before this case was filed, plaintiff is entitled to discover Union Security's rationale for the denial of benefits.  Accordingly, defendants shall provide full and complete answers to Interrogatory Nos. 6-10.


**Production Request No. 1**

Production No. 1 requests the complete file, including the internal rules, guidelines, and  protocols that defendants used in deciding plaintiff's claim.  Union Security argues that it has now produced the internal rules, guidelines, and protocols that it used in deciding plaintiff's claim and that this issue is moot.  Doc. 45, p. 15.  Plaintiff disputes that the motion is moot, arguing that Union Security has requested that plaintiff sign a protective order before the production of "certain other claim guidelines."  Doc. 48-2. (Nov. 2, 2007 Letter).

The record is unclear as to what "guidelines" remain in dispute.  It appears that Union Security is drawing a distinction between "guidelines used in deciding plaintiff's claim,"

---

[15]

Discovery concerning this issue takes on additional importance because Union Security argues that "defendant continuously updated plaintiff about the status of its review."  Doc. 45, p. 10, footnote 4.  Plaintiff is entitled to know the basis of this argument which is not consistent with the "administrative record" filed with the court.

[16]

Because Union Security (or Assurant) failed to issue a decision, plaintiff filed this lawsuit.

which apparently have now been produced, and some "other" guidelines which defendants are willing to produce under a stipulated protective order which plaintiff refuses to sign.[17] Because the nature of the "other" guidelines is unclear, the court reserves ruling on Production Request No. 1 pending further briefing.[18]  The parties shall confer and, if unable to reach an agreement, plaintiff shall file a supplemental brief explaining the remaining controversy on or before **January 18, 2008.**  Union Security shall file a response brief on or before **January 31, 2008.**[19]

**Production Request No. 2**

Production Request No. 2 asks for a complete copy of the plan documents and all amendments to the plan from July 1, 1994 to the present.  Union Security opposes the motion to compel, arguing that plaintiff has "the controlling group insurance policy" which is the only "plan" document in Union Security's possession.  Union Security's response is deficient because it does not address any amendments to the plan after 1994.  If Union Security has

---

[17]

Plaintiff was entitled to see the internal rules and guidelines ***used or considered  in evaluating his claim*** under the terms of the administrative appeal procedure.  It is not clear why those guidelines have only recently been produced.

[18]

Plaintiff apparently refuses to sign the protective order because it would prevent him from sharing information with his former employer or the Kansas Insurance Commissioner.

[19]

As an alternative, the parties may agree to enter into a stipulated protective order without prejudice to plaintiff's right to challenge Union Security's need for a protective order.  Such an agreement would allow plaintiff to review the documents and then determine how to proceed.

no record of any such amendments, it should affirmatively state so under oath.  If records concerning amendments exists, they shall be produced on or before **January 18, 2008.**

**Production Request No. 3**

Production Request No. 3 is similar to No. 2 and requests a certified copy of the group insurance policy from 1994 to the present, including all endorsements, amendments, and exclusions.  Union Security asserts the same response as given to Production Request No. 2.

The nature of the "certification" requested by plaintiff is unclear and therefore DENIED.  However, similar to the above ruling, Union Security shall produce any amendments to the policy after 1994 or state under oath that none exist.

**Production Request No. 4**

Request No. 4 asks for all correspondence and electronic communication between Union Security, Fortis Benefits, Assurant Employee Benefits and any other person or entity concerning plaintiff or his claim.  Union Security represents that it has produced all documents in its possession that are responsive to the request.

In light of Union Security's representation that ***all*** documents have been produced, the motion to compel Production Request No. 4 shall be DENIED.  However, given this response and the fact Myers issued a "determination" after 7 months of silence and the day after this lawsuit was filed, the court will grant plaintiff leave to depose Ms. Myers to explain

the delay.[20]

**Production Request No. 6**

Request No. 6 seeks the employment/personnel files for all employees who provided opinions, reports or evaluations of plaintiff's claim. The court declines to entertain discovery of employment files because such a request results in open-ended discovery which is contrary to ERISA's discovery policies.

**Production Request No. 7**

Plaintiff seeks production of all documents concerning plaintiff, whether in claim files or not. Union Security objects to the request but represents that "all non-privileged, responsive documents" have been produced. As discussed above, Union Security's assertion of the attorney-client privilege has been rejected. Moreover, the court rejects Unions qualification that "responsive" documents have been produced. The motion to compel shall be GRANTED and defendant(s) shall produce *all* documents concerning plaintiff without qualification. If no additional documents exist, Union Security shall state so under oath.

**Production Request No. 8**

Request No. 8 seeks all documents supporting defendants' answers to Interrogatory

---

[20]

Again, this issue is placed in controversy by Union Security's assertion that the delay in no way compromised the decision-making process. Myers' decision to deny the claim one day after this lawsuit was filed raises a red flag which is not explained by the administrative record.

Nos. 5-10.  The motion to compel shall be GRANTED.  The "administrative record" is an unorganized mess and Union Security shall organize its response to match each interrogatory.

**Other Discovery Requests**

The parties allude generally to deposition notices and other discovery requests which have not been briefed.  The court declines to express any opinion concerning such issues except to note the guidelines expressed herein.

**IT IS THEREFORE ORDERED** that Union Security's motion for a protective order **(Doc. 26)** and plaintiff's motion to compel **(Doc. 28)** are **GRANTED IN PART and DENIED IN PART**, consistent with the rulings expressed herein.

A motion for reconsideration of this order under D. Kan. Rule 7.3 is not encouraged. The standards governing motions to reconsider are well established.  A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence.  Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate.  Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by the court in Comeau v. Rupp.  The response to any motion for reconsideration shall not exceed three pages.  No reply shall be filed.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 4th day of January 2008.


S/ Karen M. Humphreys
_____
KAREN M. HUMPHREYS
United States Magistrate Judge